UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MONTREZ IVELL DENNIS JACKSON,<br><br>    Plaintiff,<br>  v.<br><br>THE KROGER CO. et al,<br><br>    Defendants. | CASE NO. 2:24-cv-02128-LK<br><br>ORDER ON MOTION TO DISMISS AND MOTION TO REMAND |

This matter comes before the Court on Plaintiff Montrez Ivell Dennis Jackson's Motion to Remand, Dkt. No. 33, and Defendant The Kroger Co.'s Motion to Dismiss, Dkt. No. 54. For the reasons described below, the Court denies Mr. Jackson's motion to remand and grants in part and denies in part Kroger's motion to dismiss.

## I.   BACKGROUND

This case arises out of an altercation at a Seattle QFC grocery store between Mr. Jackson and security personnel employed by Defendant Metro One Loss Prevention. Dkt. No. 1-4 at 3–5. Mr. Jackson, who is a Seattle resident, alleges that on October 31, 2024, Metro One security

ORDER ON MOTION TO DISMISS AND MOTION TO REMAND - 1

personnel working at QFC falsely accused him of shoplifting. *Id.* 4–5. Even though Mr. Jackson showed a receipt confirming his purchase, the security personnel physically and verbally assaulted him, including by striking him with a closed fist and using racial slurs. *Id.* QFC store managers, supervisors, and customers witnessed the altercation. *Id.* at 4–5, 9.

After the incident, Mr. Jackson filed a formal complaint with Kroger, which owns QFC. *Id.* at 5. For two weeks afterwards, Mr. Jackson followed up on the investigation's progress and noted his concerns "about the lack of diligence in the investigation and the length of time it was taking to retrieve video footage." *Id.* The investigation was run through Sedgwick Claim Services. *Id.* Although Mr. Jackson informed the investigator that he "was already in the process of filing charges related to the incident," the investigator offered Mr. Jackson $1,000 in exchange for releasing Kroger from any liability associated with the incident. *Id.* Mr. Jackson refused the offer, and the investigation was subsequently closed without resolution, purportedly because of an inability to obtain the relevant video footage. *Id.* at 5–6. The incident was also reported to Seattle law enforcement. *Id.* at 6. The security personnel involved remain on duty. *Id.*

Mr. Jackson asserts eight claims against Metro One and Kroger: (1) assault, (2) intentional infliction of emotional distress, (3) negligence, (4) false imprisonment, (5) violation of civil rights under Chapter 49.60 of the Revised Code of Washington and 42 U.S.C. § 1981, (6) defamation, (7) negligent misrepresentation, and (8) violations of Washington's Consumer Protection Act, Wash. Rev. Code Ch. 19.86. Dkt. No. 1-4 at 6–8. He seeks $1,056,000 in damages and "[i]njunctive relief requiring Defendants to implement proper training for security personnel and accountability measures." *Id.* at 11–12.

Mr. Jackson filed his lawsuit in King County Superior Court, and Kroger removed the case to this Court on December 23, 2024. Dkt. No. 1. Although Kroger removed the case based on diversity jurisdiction, it did not adequately establish the parties' citizenship in its initial removal

ORDER ON MOTION TO DISMISS AND MOTION TO REMAND - 2

notice. It has since amended its removal petition to correct that error. Dkt. No. 47. Mr. Jackson has moved to remand the case back to state court on the basis that both he and QFC are citizens of Washington. Dkt. No. 33 at 1–2. Kroger, for its part, has moved to dismiss Mr. Jackson's claims against it. Dkt. No. 54. Metro One answered the complaint and subsequently reached a pending settlement with Mr. Jackson. Dkt. Nos. 51, 77.

## II.   DISCUSSION

### A.   Mr. Jackson's Motion to Remand is Denied

Diversity jurisdiction exists over all civil actions where the matter in controversy exceeds $75,000 and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). Whenever a removing defendant invokes diversity jurisdiction, the district court strictly construes the general removal statute against removal. *See Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1056–57 (9th Cir. 2018). The presumption against removal based on diversity jurisdiction "means that the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam).

Mr. Jackson is a citizen of Washington because he is domiciled here. Dkt. No. 47 at 3. Both Kroger and Metro One are corporations, meaning that their citizenship is determined by their places of incorporation and principal places of business. 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is where its "nerve center" is, which is usually (but not always) its headquarters. *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010). Here, Kroger is incorporated in Ohio and has its principal place of business there, too. Dkt. No. 47 at 3. Metro One is incorporated in Maryland and has its principal place of business in New York. *Id.* Because neither Kroger nor Metro One are citizens of Washington, the parties are completely diverse. *See Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1095 (9th Cir. 2004) (complete diversity exists when each plaintiff is a citizen of a different state than each of the defendants).

ORDER ON MOTION TO DISMISS AND MOTION TO REMAND - 3

Mr. Jackson asserts that QFC destroys complete diversity because it is a citizen of Washington. Dkt. No. 33 at 2. That argument fails. Even if Mr. Jackson had named QFC as a defendant (and he has not), QFC is an assumed business name of Fred Meyer, which is incorporated in Ohio and has its principal place of business there. Dkt. No. 49 at 1–2. That would make Fred Meyer, and by extension QFC, a citizen of Ohio. Thus, even if QFC were a defendant in this case, the parties would still be diverse.

There is no dispute that the amount in controversy requirement is met, and the Court agrees that it is.

Mr. Jackson's motion to remand is denied.

**B.     Kroger's Motion to Dismiss in Granted in Part and Denied in Part**

1. Legal Standard

When deciding a motion under Federal Rule of Civil Procedure 12(b)(6), a court must assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Instead, the plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "detailed factual allegations" are not required, a complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

The Court also has a duty to construe pro se pleadings liberally, so the allegations made in pro se complaints are held to a less stringent standard than those made in formal pleadings drafted by professional attorneys. *Chan v. Ryan*, No. 22-CV-01796-LK, 2023 WL 197429, at *4 (W.D. Wash. Jan. 17, 2023). Liberal construction means looking at a pro se complaint's contents, not its form, *Ross v. Williams*, 950 F.3d 1160, 1173 n.19 (9th Cir. 2020), and affording the pro se plaintiff "the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

2. Mr. Jackson Fails to State a Claim for Assault, But He Does State a Claim for Battery (Count 1)

Mr. Jackson's complaint lists "assault" under Section 9A.36.041 of the Revised Code of Washington as one of his causes of action. As a preliminary matter, Section 9A.36.041 is a criminal statute with no private right of action. *See Lynch v. City of Winlock*, 2000 WL 776826, at *2 (Wash. Ct. App. 2000) (unpublished) (holding that plaintiff could not sue for violation of Section 9A.36.041 because that statute "contain[s] no express provisions permitting a private cause of action based upon [its] violation"). Construing the claim liberally as alleging a civil tort instead, it is unclear whether Mr. Jackson is really alleging battery rather than assault, or if he instead intends to assert a claim of *both* assault and battery. His specific allegation relative to his assault claim is that "Defendants, through their employees, intentionally inflicted physical harm on the Plaintiff without justification, including striking him with a closed fist." Dkt. No. 1-4 at 6. As a result of "being struck with a closed fist," Mr. Jackson experienced "[j]aw soreness" and "difficulty in eating, speaking, and performing daily activities for several weeks." *Id.* at 9.

"A defendant is liable for battery if (a) 'he [or she] acts intending to cause a harmful or offensive contact with the [plaintiff or a third party], or an imminent apprehension of such contact, and (b) a harmful or offensive contact with the [plaintiff] directly or indirectly results.'" *Kumar v. Gate Gourmet Inc.*, 325 P.3d 193, 204 (Wash. 2014) (quoting Restatement (Second) of Torts § 13

(1965)). In contrast, "[a]n assault is any act of such a nature that causes apprehension of a battery." *McKinney v. City of Tukwila*, 13 P.3d 631, 641 (Wash. Ct. App. 2000). Here, Mr. Jackson has not alleged assault—i.e., that Defendants' actions caused him apprehension of a battery. *See Allen v. Hannaford*, 244 P. 700, 701 (Wash. 1926) (whether an assault has occurred depends on "the apprehensions created in the mind of the person assaulted"); *Childress v. Boeing Aerospace Operations, Inc.*, 2019 WL 1902767, at *3 (Wash. Ct. App. 2019) (unpublished) ("To state a claim for assault, a plaintiff must allege an act that creates an apprehension of a battery."). Rather, by alleging that Defendants intentionally hit him with a closed fist—without accompanying apprehension on Mr. Jackson's part—he seems to be advancing a claim for battery.

Mr. Jackson's complaint appears to have given Kroger adequate notice of his claim, because it addresses the claim of battery in its motion to dismiss. Dkt. No. 54 at 3–4. Although Kroger argues that "[o]ther than stating that the security personnel intended to inflict physical harm on him," Mr. Jackson "provides no facts in support of his assertion that the touching was intentional," Dkt. No. 54 at 4, Mr. Jackson's allegation that Defendants acted intentionally, coupled with his allegation that they used a "closed fist" while doing so, Dkt. No. 1-4 at 6, suffices. "[T]he 'intent' element of battery is satisfied where a defendant knows to a 'substantial certainty' that his actions will result in the harmful or offensive touching," *Kumar*, 325 P.3d at 204–05 (cleaned up), and it is reasonable to infer that a closed-fist punch is thrown with intent to make harmful physical contact with a person.

To the extent Mr. Jackson intended to advance a claim of assault and battery, his assault claim is dismissed, but his battery claim survives.

3. <u>Mr. Jackson States a Claim for Intentional Infliction of Emotional Distress (Count 2)</u>

The tort of intentional infliction of emotional distress requires "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional

distress on the part of the plaintiff." *Robel v. Roundup Corp.*, 59 P.3d 611, 619 (Wash. 2002). To satisfy the first element, a plaintiff must prove conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Although typically a question for the jury, the district court serves a gatekeeping role in determining what qualifies as extreme and outrageous conduct. *See Trizuto v. Bellevue Police Dep't*, 983 F. Supp. 2d 1277, 1294 (W.D. Wash. 2013) (citing cases). Kroger asks the Court to exercise its gatekeeping role here and find that the alleged wrongdoing is not extreme or outrageous as a matter of law. Dkt. No. 54 at 5–6. To dismiss Mr. Jackson's claim on this basis, the Court would have to find that reasonable minds could not differ as to whether a store security guard publicly directing racial slurs at a customer or striking them with a closed fist is extreme and outrageous conduct.

The Court finds that reasonable minds could differ in assessing whether the conduct alleged here is extreme and outrageous, so it will not dismiss Mr. Jackson's claim at this stage. Kroger concedes that "racial slurs in public are facially disturbing." *Id.* at 6. Such slurs are made more outrageous when made by someone in a position of authority. *See Jones v. Rabanco, Ltd.*, 439 F. Supp. 2d 1149, 1170 (W.D. Wash. 2006). Here, Mr. Jackson also alleges that store security personnel racially profiled and harassed him, falsely accused him of stealing, and unjustly detained him by not allowing him to leave the store against his will, despite his production of a receipt for his purchase. Dkt. No. 1-4 at 4–7. Those allegations, combined with the alleged physical assault against him, suffice at this stage. *See also, e.g.*, *Erwin v. OBI Seafoods, LLC*, No. 2:22-CV-00893-JHC, 2024 WL 1138905, at *16 (W.D. Wash. Mar. 15, 2024); *Thompson v. N. Am. Terrazzo, Inc.*, No. C13-1007RAJ, 2015 WL 926575, at *13 (W.D. Wash. Mar. 4, 2015).[1]

---

[1] Mr. Jackson's allegations also suffice to establish severe emotional distress: he alleges that, due to the assault, false

ORDER ON MOTION TO DISMISS AND MOTION TO REMAND - 7

Mr. Jackson's intentional infliction of emotional distress claim survives.

4. Mr. Jackson Fails to State a Claim for Negligent Supervision and Training, and Negligent Hiring (Count 3)

Mr. Jackson's negligence claim is based on negligent hiring, training, and supervision theories. Dkt. No. 1-4 at 7. These are recognized causes of action in Washington. "An employer can be liable for negligent hiring . . . for failing to exercise ordinary care by hiring or retaining an employee known to be unfit." *Evans v. Tacoma Sch. Dist. No. 10*, 380 P.3d 553, 563 (Wash. Ct. App. 2016). And under negligent supervision and training theories, "an employer can be liable for failing to exercise ordinary care in supervising an employee." *Id.* at 564.

Kroger argues that these claims should be dismissed for lack of particularized factual allegations, and because Mr. Jackson has not established that Kroger owed him a duty of care. Dkt. No. 54 at 6–7. The Court agrees that these claims must be dismissed. The complaint's allegations do not support a negligent hiring claim; there are no facts alleged about the hiring process and what was known about the relevant security personnel at that time. Furthermore, a claim for negligent hiring must show that the subject employee was acting outside of the scope of his employment. *LaPlant v. Snohomish Cnty.*, 271 P.3d 254, 257 (Wash. Ct. App. 2011). Mr. Jackson specifically alleges that security personnel were "acting *within* the scope of their employment." Dkt. No. 1-4 at 4 (emphasis added).[2] The complaint also fails to state a claim for negligent training and supervision. To establish a claim for negligent training and/or supervision, Mr. Jackson must show that (1) the subject employees acted outside the scope of their employment with Kroger;

---

accusations, and "use of derogatory language based on race," he suffered "embarrassment and trauma," "long-lasting psychological harm," and "heightened anxiety and fear in public spaces[.]" Dkt. No. 1-4 at 10–11.

[2] "[W]hen an employee commits negligence *within* the scope of employment, a different theory of liability—vicarious liability—applies." *LaPlant v. Snohomish Cnty.*, 271 P.3d 254, 256 (Wash. Ct. App. 2011) (citing *Niece v. Elmview Grp. Home*, 929 P.2d 420, 425–26 (Wash. 1997) (emphasis added)). "Under Washington law, therefore, a claim for negligent hiring, training, and supervision is generally improper when . . . the employee's actions occurred within the course and scope of employment." *Id.* at 257.

ORDER ON MOTION TO DISMISS AND MOTION TO REMAND - 8

(2) they presented a risk of harm; (3) Kroger knew, or should have known in the exercise of reasonable care, that the employees posed a risk to others; and (4) Kroger's failure to supervise or train was a proximate cause of the loss. *Garrison v. Sagepoint Fin., Inc.*, 345 P.3d 792, 801 (Wash. Ct. App. 2015). He fails to allege any of the elements of this claim.

Kroger's motion to dismiss Mr. Jackson's negligence claims is granted. *See Davis v. Choo*, No. C19-1929-JCC, 2020 WL 6685068, at *2 (W.D. Wash. Nov. 12, 2020) (allegations that "a store employee assaulted [the plaintiff] and discriminated against her" were insufficient to state a claim for negligent training and supervision or negligent hiring).

5. Mr. Jackson States a False Imprisonment Claim (Count 4)

Kroger next moves to dismiss Mr. Jackson's false imprisonment claim. "The gist of an action for . . . false imprisonment is the unlawful violation of a person's right of personal liberty or the restraint of that person without legal authority[.]" *Bender v. City of Seattle*, 664 P.2d 492, 499 (Wash. 1983). "A person is restrained or imprisoned when he is deprived of either liberty of movement or freedom to remain in the place of his lawful choice[.]" *Id.* (citation omitted). "[S]uch restraint or imprisonment may be accomplished by physical force alone, or by threat of force, or by conduct reasonably implying that force will be used." *Kilcup v. McManus,* 394 P.2d 375, 379 (Wash. 1964). "[T]he plaintiff in a false imprisonment claim must show merely that the defendant intended to confine the plaintiff, not that the defendant intended to do so without legal authority." *Stalter v. State*, 51 P.3d 837, 844 (Wash. Ct. App. 2002), *rev'd in part on other grounds,* 86 P.3d 1159 (Wash. 2004).

Mr. Jackson alleges that he was restrained against his will by the security personnel based on their suspicion that he was stealing from the store, even though he showed a receipt confirming his purchase. Dkt. No. 1-4 at 5, 7, 9. Contrary to Kroger's arguments, Dkt. No. 54 at 7, the complaint's allegations are sufficient to show that Mr. Jackson was unlawfully deprived of liberty

ORDER ON MOTION TO DISMISS AND MOTION TO REMAND - 9

during the time he was restrained. Specifically, Mr. Jackson's allegations suggest that he was restrained (in a manner causing him to have sore wrists) because of racial animus, and that security personnel were not diligent in checking his receipt to corroborate their suspicions before restraining him. Dkt. No. 1-4 at 5, 7, 9. That is enough at this stage to state a claim for false imprisonment.

Kroger's motion to dismiss Mr. Jackson's false imprisonment claim is denied.

6. <u>Mr. Jackson Fails to State a Claim Under the WLAD and 42 U.S.C. § 1981 (Count 5)</u>

Mr. Jackson brings a claim under the Washington Law Against Discrimination ("WLAD"), which makes it unlawful for "any person or the person's agent or employee to commit an act [of] discrimination . . . in any place of public . . . accommodation." Wash. Rev. Code § 49.60.215. He also appears to bring a claim under 42 U.S.C. § 1981, which prohibits racial discrimination in the making and enforcement of private contracts.

As an initial matter, Kroger incorrectly analyzes these claims as a single claim under 42 U.S.C. § 1983. Dkt. No. 54 at 7–8. Mr. Jackson's complaint does not reference Section 1983; instead, the complaint's descriptions of his "civil rights" claims contain references to Chapter 49.60 of the Revised Code of Washington (the WLAD), Dkt. No. 1-4 at 2, 7, 9, and 42 U.S.C. § 1981, *id.* at 9.

To state a prima facie case for discrimination under the WLAD, Mr. Jackson must establish four elements: (1) that he is a member of a protected class, Wash. Rev. Code § 49.60.030(1); (2) that QFC is a place of public accommodation, *id.* § 49.60.215; (3) that Kroger discriminated against him, whether directly or indirectly, *id.*; and (4) that the discrimination occurred "because of" Mr. Jackson's status or, in other words, that the protected status was a substantial factor causing the discrimination, *id.* § 49.60.030. *See State v. Arlene's Flowers, Inc.*, 389 P.3d 543, 551 (2017), *cert. granted, judgment vacated on other grounds*, 585 U.S. 1013 (2018).

Similarly, to state a prima facie case of discrimination under Section 1981, a plaintiff must show that (1) he is a member of a protected class; (2) he attempted to contract for certain services; and (3) he was denied the right to contract for those services due to circumstances surrounding that denial that give rise to an inference of discrimination. *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1145–47 (9th Cir. 2006); *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004). The last element can be satisfied by showing that (1) similarly situated individuals, who are not members of a protected class, were able to contract for those services, or (2) the plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory. *Lindsey*, 447 F.3d at 1145 (citing *Christian v. Wal–Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001)); *Portfolio Invs., LLC v. First Sav. Bank*, No. C12-104 RAJ, 2013 WL 1187622, at *5 (W.D. Wash. Mar. 20, 2013). Some courts have held that "to be actionable under section 1981, a retail store defendant must have actually prevented or interfered with the plaintiff's attempt to make a purchase." *Clark v. Safeway, Inc.*, 478 F. Supp. 3d 1080, 1088–91 (D. Or. 2020) (collecting cases).

Mr. Jackson's claims fail at the first hurdle: he does not allege that he is a member of a protected class. For this reason, these claims are dismissed.

       7.   <u>Mr. Jackson Fails to State a Defamation Claim (Count 6)</u>

To state a defamation claim, a plaintiff must allege (1) that the defendant's statement was false, (2) that the statement was unprivileged, (3) that the defendant was at fault, and (4) that the statement proximately caused damages. *Mark v. Seattle Times*, 635 P.2d 1081, 1088 (Wash. 1981). A defamation claim must be based on a statement that is provably false; in other words, the defamatory statement must be a statement of fact, not of opinion. *Life Designs Ranch, Inc. v. Sommer*, 364 P.3d 129, 135 (Wash. Ct. App. 2015). Not "every misstatement of fact, however insignificant, is actionable as defamation"; instead "state law requires not only that there be fault

on the part of the defamation defendant, but that the substance of the statement makes substantial danger to reputation apparent." *Mark*, 635 P.2d at 1092 (cleaned up).

Mr. Jackson alleges that security personnel falsely accused him of stealing from the QFC store. Dkt. No. 1-4 at 5, 8. Kroger argues that "[o]ther than alleging that the statements were made and that his reputation was damaged," Mr. Jackson "provides no further factual allegations regarding the truth or falsity of the alleged statements, who made those statements, when those statements were made, if any third party heard those statements, whether the statements were unprivileged, or any of the damages caused to his reputation that would entitle him to relief." Dkt. No. 54 at 9. That is not exactly correct. He alleges the statements were false, because he had a receipt proving he had paid for the merchandise at issue. Dkt. No. 1-4 at 5. He alleges the security personnel made the false statements during the encounter, *id.*, and it is reasonable to infer the false statements of theft were made without first checking his receipt or despite checking the receipt, either of which suffices to show fault at this stage.

However, Mr. Jackson does not allege that the statements were unprivileged. In certain circumstances, a "qualified privilege" attaches to the person making it. "A qualified privilege protects the maker from liability for a defamatory statement unless it can be shown that the privilege was abused." *Demopolis v. People Nat'l Bank of Washington*, 796 P.2d 426, 431 (Wash. Ct. App. 1990).

> These occasions arise when the [statement] is for the protection of the interest of the [speaker], the recipient or a third person; persons sharing a common interest; family relationships; [and] public interest. In connection with the last mentioned type of privilege the [statement] is privileged only when made to a public officer or a private citizen who is authorized to act.

*Owens v. Scott Pub. Co.*, 284 P.2d 296, 302 (Wash. 1955) (citations omitted). For example, the Washington Supreme Court has held that police officers have a qualified privilege to release information to the public and press. *Bender v. City of Seattle*, 664 P.2d 492, 504 (Wash. 1983). If

ORDER ON MOTION TO DISMISS AND MOTION TO REMAND - 12

the defendant has a qualified privilege, the plaintiff must establish an abuse of that qualified privilege to recover. In order to establish an abuse of a qualified privilege, there must be "proof of knowledge or reckless disregard as to the falsity of a statement"—in other words, "actual malice." *Id.* at 503.

In addition, Mr. Jackson's allegations regarding damages are conclusory. He alleges that the "false and defamatory statements . . . damage[d] his reputation" without explaining how or otherwise providing any supporting factual allegations. *See Bergman v. Moto*, No. 22-CV-00161-RAJ, 2023 WL 4297656, at *1 (W.D. Wash. June 30, 2023) (dismissing defamation claim when "the allegations of defamation [we]re largely conclusory, namely that Plaintiff made false statements that the Defendant abused and assaulted her to police"); *Nahum v. Spear*, No. 2:20-CV-1151-DWC, 2021 WL 1158854, at *6 (W.D. Wash. Mar. 26, 2021) (dismissing defamation claim when plaintiff "fail[ed] to provide any specific facts" to support the alleged harm he suffered from a police report).

Because Mr. Jackson fails to adequately allege the second and fourth elements of his defamation claim, Kroger's motion to dismiss this count is granted.

8.  <u>Mr. Jackson's Negligent Misrepresentation Claim is Dismissed (Count 7)</u>

Mr. Jackson alleges that during Kroger's investigation of his claim, it negligently misrepresented to him that the security camera footage of the incident was unavailable. Dkt. No. 1-4 at 8. Kroger seeks to dismiss this claim because "these facts fail to establish any required element of negligent misrepresentation[.]" Dkt. No. 54 at 10.

To establish a claim for negligent misrepresentation, "a plaintiff must show that the defendant negligently supplied false information the defendant knew, or should have known, would guide the plaintiff in making a business decision, and that the plaintiff justifiably relied on the false information." *Van Dinter v. Orr*, 138 P.3d 608, 609 (Wash. 2006). "In addition, the

plaintiff must show that the false information was the proximate cause of the claimed damages." *Id.* The Court agrees with Kroger that the facts alleged do not state a claim for negligent misrepresentation. First, there are no facts alleged that suggest that the information Kroger supplied—that the video footage was unavailable—was false. Although Mr. Jackson alleges in documents outside the complaint that the store surveillance video display by the self-checkout showed a "recording in progress" banner at the bottom of the screen, the Court can only consider what is in the complaint. *See* Dkt. No. 1-6 at 52–53 (alleging that "[s]tore surveillance cameras display[ed] 'active recording,'" which "should ultimately mean video footage should be available."); *see also e.g.*, Dkt. No. 45 at 26. Additionally, Mr. Jackson does not allege that he relied on the false information in making a business decision.

The Court grants Kroger's motion to dismiss Mr. Jackson's negligent misrepresentation claim.

### 9. Mr. Jackson's CPA Claim is Dismissed (Count 8)

Finally, Mr. Jackson alleges that Kroger violated Washington's Consumer Protection Act ("CPA") by "ignoring [his] grievances, offering an inadequate settlement, and denying [his] claim without due diligence." Dkt. No. 1-4 at 8. To state a CPA claim, Mr. Jackson must allege (1) an unfair or deceptive act or practice (2) occurring in trade or commerce (3) that impacts the public interest (4) causing an injury to his business or property with (5) a causal link between the unfair or deceptive act and the injury suffered. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986).

Kroger seeks to dismiss this claim for lack of particularized factual allegations supporting it. The Court agrees and dismisses the claim. Without more, simply ignoring grievances and offering a low settlement amount are not unfair or deceptive practices. And the complaint does not show how Kroger lacked diligence in investigating the claim, other than generally alleging that

ORDER ON MOTION TO DISMISS AND MOTION TO REMAND - 14

Kroger took a long time to retrieve the video footage, and ultimately was unable to retrieve it. Dkt. No. 1-4 at 5–6. These facts do not plausibly suggest that Kroger acted unfairly or deceptively. Finally, Mr. Jackson fails to allege how any unfair or deceptive act damaged his business or property, let alone a causal link between the act and injury.

The Court grants Kroger's motion to dismiss Mr. Jackson's CPA claim.

**C.    Leave to Amend**

Federal Rule of Civil Procedure 15(a)(2) directs district courts to "freely give leave when justice so requires." As the language of the rule suggests, the standard for leave to amend is "very liberal." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). This is because "the underlying purpose of Rule 15 [is] to facilitate [a] decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up). A district court should therefore deny leave to amend "only if there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment[.]" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (cleaned up).

There is no evidence of undue delay, bad faith, or dilatory motive here. And this is not a case in which Mr. Jackson has "repeatedly" failed to cure the deficiencies in his complaint. Defendants' motion to dismiss was the first motion to attack the sufficiency of his allegations. *See United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1183 (9th Cir. 2016) (granting leave to file fourth amended complaint because motion to dismiss was first pleading to attack the sufficiency of his allegations). More importantly, however, Kroger does not articulate any prejudice. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam) (prejudice to the opposing party "carries the greatest weight" and, absent prejudice or a

"strong showing" under the other factors, there is a presumption in favor of granting leave to amend).

This case is also in its infancy; the Court has not yet issued a scheduling order. Dkt. No. 46; *see DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187–88 (9th Cir. 1987) (leave to amend did not prejudice opposing party because case was "still at the discovery stage with no trial date pending"). And finally, the Court cannot say that Mr. Jackson will be unable to cure the deficiencies identified above. *See Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) ("We consistently have held that leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." (cleaned up)). Accordingly, Mr. Jackson is granted leave to amend his complaint.

### III. CONCLUSION

For the reasons stated above, the Court DENIES Mr. Jackson's Motion to Remand, Dkt. No. 33, and GRANTS IN PART and DENIES IN PART Kroger's Motion to Dismiss, Dkt. No. 54. All claims are dismissed except Mr. Jackson's claims of battery (count 1), intentional infliction of emotional distress (count 2), and false imprisonment (count 4).

Within thirty (30) days of the date of this Order, Mr. Jackson may file an amended complaint. Such complaint must provide a short and plain statement of the factual basis for each of the claims as required by Federal Rule of Civil Procedure 8. As the Court has previously cautioned, Dkt. No. 70 at 2, Mr. Jackson may not amend his complaint in piecemeal fashion; the complaint must be contained in a single document. Fed. R. Civ. P. 8, 10; LCR 10. To the extent the complaint relies on exhibits, they must be filed contemporaneously with the amended complaint. Because an amended complaint operates as a complete substitute for an original pleading, it must not rely on earlier-filed pleadings or briefs. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). Any amended complaint must clearly identify the defendant, the claims

asserted, the specific facts that Mr. Jackson believes support each claim, and the specific relief requested. If a proper amended complaint is not filed within thirty days of the date of this Order, only Mr. Jackson's battery claim (count 1), intentional infliction of emotional distress (count 2), and false imprisonment claim (count 4) will survive in this litigation.

Additionally, the Court appreciates Mr. Jackson's apology for his procedural mistakes, Dkt. No. 73, but wishes to emphasize that he should prosecute his case in accordance with the appropriate rules. The Court cannot "instruct" parties on how to litigate their claims or defenses; thus, Mr. Jackson need not (and should not) wait for instructions from the Court before filing appropriate motions or otherwise taking appropriate actions to advance his case in accordance with the applicable rules. The Court again reminds Mr. Jackson that this district has published a guide to assist pro se litigants, which explains the process for filing and noting motions, the process for seeking court-appointed counsel, rules that litigants must follow, and the phases of litigation, among other topics. The Court encourages Mr. Jackson to review that guide, which is available at https://www.wawd.uscourts.gov/sites/wawd/files/ProSeGuidetoFilingYourLawsuitinFederalCourt.pdf.

Dated this 14th day of May, 2025.

Lauren King
United States District Judge